**UNITED STATES DISTRICT COURT FOR THE MIDDLE
DISTRICT OF FLORIDA
FORT MYERS DIVISION**

STACY and JOHN MCKINNES                          :
Individually and as Natural Guardians of         :
C.M., a minor, in his individual capacity,       :       Docket No.:
                                                 :
Plaintiffs,                                      :       JURY TRIAL DEMANDED
                                                 :
      vs.                                       :
                                                 :
THE SCHOOL BOARD OF CHARLOTTE                     :
COUNTY, FLORIDA                                   :
1445 Education Way                               :
Port Charlotte, FL 33948, and                    :
                                                 :
BABCOCK NEIGHBORHOOD                              :
SCHOOL, INC.,                                     :
43301 Cypress Parkway                            :
Babcock Ranch, Florida 33982, and                :
                                                 :
HEATHER TACK, IN HER INDIVIDUAL                   :
CAPACITY,                                         :
43301 Cypress Parkway                            :
Babcock Ranch, Florida 33982, and                :
                                                 :
TARA BODE, IN HER INDIVIDUAL                      :
CAPACITY,                                         :
43301 Cypress Parkway                            :
Babcock Ranch, Florida 33982, and                :
                                                 :
TERRENCE GUETLER, IN HIS                          :
INDIVIDUAL CAPACITY,                             :
43301 Cypress Parkway                            :
Babcock Ranch, Florida 33982, and                :
                                                 :
CAITLAN MORRIS, IN HER INDIVIDUAL                 :
CAPACITY,                                         :
43301 Cypress Parkway                            :
Babcock Ranch, Florida 33982.                    :

1

:
:
:
Defendants.                                    :

_____/

## VERIFIED COMPLAINT

Plaintiffs, STACY and JOHN MCKINNES, o/b/o Plaintiff, C.M.,[1] a minor (together, "Plaintiffs"), by and through their undersigned attorneys, bring this Complaint against the above-named "Defendants," THE SCHOOL BOARD OF CHARLOTTE COUNTY, FLORIDA, its agents, servants, and successors in office, BABCOCK NEIGHBORHOOD SCHOOL, INC., its agents, servants, and successors in office, HEATHER TACK, in her individual capacity, ("PRINCIPAL"), TARA BODE, in her individual capacity, ("ASSISTANT PRINCIPAL"), TERRENCE GUETLER, in his individual capacity, ("SCHOOL RESOURCE OFFICER"), CAITLAN MORRIS, in her individual capacity, ("SCHOOL COUNSELOR"), collectively referred to as "DEFENDANTS") to safeguard their rights under the United States Constitution, State and Federal Law, and in support thereof, alleges the following:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff ("C.M.") is a minor child and student with disabilities. He resides at 43675 Cattleman Dr., Punta Gorda, FL 33982.

2. Plaintiffs, STACY ("MOTHER") and JOHN MCKINNES ("FATHER") are parents and natural guardians of Plaintiff, C.M. They reside at 43675 Cattleman Dr., Punta Gorda, FL 33982.

---

[1] Pursuant to Rule 2.425 of the Florida Rules of General Practice and Judicial Administration, the minor Plaintiff proceeds in this case under a pseudonym. Any other mind child referred to in this Complaint will be identified by initials or other pseudonym.

2

3. Defendant, the School Board of Charlotte County ("SCHOOL BOARD"), is a local education agency ("LEA") with its principal place of business located at 1445 Education Way, Port Charlotte, FL 33948.

4. The Defendant, Babcock Neighborhood School, Inc. ("BABCOCK"), is a corporation operating Babcock Neighborhood School with its principal place of business located at 43301 Cypress Parkway, Babcock Ranch, Florida 33982.

5. At all times material hereto, Defendant, Heather Tack ("TACK"), was employed by the Defendant, SCHOOL BOARD, and Defendant, BABCOCK, as a principal and was acting within the course and scope of her employment, and an agent of Defendants SCHOOL BOARD and BABCOCK. She is sued in her individual capacity for actions taken recklessly and with willful disregard for student safety and education.

6. At all times material hereto, Defendant, Tara Bode ("BODE"), was employed by the Defendant, SCHOOL BOARD, and the Defendant, BABCOCK, as an assistant principal, and was acting within the course and scope of her employment, and an agent of Defendants SCHOOL BOARD and BABCOCK. She is sued in her individual capacity for actions taken recklessly and with willful disregard for student safety and education.

7. At all times material hereto, Defendant, DFC Terrence J. Guetler ("GUETLER"), was employed by the Defendant, SCHOOL BOARD, and Defendant, BABCOCK, as a School Resource Officer, and also by the Charlotte County Sheriff's Office, and was acting within the course and scope of his employment, and an agent of Defendants SCHOOL BOARD and BABCOCK. He is sued in her individual capacity for actions taken recklessly and with willful disregard for student safety and education.

3

**8.** At all times material hereto, Defendant, Caitlan Morris ("MORRIS"), was employed by Defendant, SCHOOL BOARD, and Defendant, BABCOCK, as the school counselor, and was acting within the course and scope of her employment, and an agent of Defendants SCHOOL BOARD and BABCOCK. She is sued in her individual capacity for actions taken recklessly and with willful disregard for student safety and education.

9. This court has jurisdiction under 28 U.S.C. § 1331, as the causes of action contained herein invoke federal question jurisdiction, as Plaintiffs bring claims arising under federal law.

10. This court has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367.

11. Venue for this action properly lies in this Judicial District pursuant to 28 U.S.C. § 1391(b) because the events that give rise to the claims in this action occurred in this District.

## FACTUAL ALLEGATIONS

12. At all times material hereto, Plaintiff STACY MCKINNES ("MOTHER") and Plaintiff JOHN MCKINNES ("FATHER') were and are natural persons, the parents of Plaintiff C.M., and are residents of Punta Gorda, Florida. (*hereinafter* referred to as "MOTHER" and/or "FATHER").

13. At all times material hereto, Plaintiff C.M. was and is a second-grade student, residing within the bounds of the School Board of Charlotte County, which operates under Defendant SCHOOL BOARD.

14. At all times material hereto, Defendant SCHOOL BOARD owned, operated, managed, and controlled Babcock Neighborhood School ("BABCOCK") located at 43301 Cypress

4

Parkway, Babcock Ranch, Florida, 33982, for the purpose of providing educational services.

15. Plaintiff C.M. has attended Defendant BABCOCK since kindergarten. Plaintiff C.M. has consistently demonstrated above-grade-level academic performance, strong reasoning skills, and a humorous, caring nature.

16. On September 23, 2025, Plaintiff C.M. 's psychiatric provider, Kristen Melervey, PMHNP, formally diagnosed Plaintiff C.M. with Attention Deficit Hyperactivity Disorder (ADHD). Immediately, Plaintiffs MOTHER and FATHER provided this formal, written diagnosis to the Defendant BABCOCK.

17. Despite this formal, written diagnosis provided to Defendant BABCOCK, Plaintiff C.M.'s guidance counselor, Defendant MORRIS, informed Plaintiff MOTHER that Plaintiff C.M. did not need a 504 or IEP plan because Plaintiff C.M. was "doing well academically." Therefore, Plaintiff C.M. was placed in the Multi-Tiered System of Supports (MTSS) process, a general education framework that delays the initiation of evaluation. [2]

18. Plaintiff MOTHER contends that she asked Defendant TACK and Defendant MORRIS many times what the school could do to help Plaintiff C.M. regarding his behaviors related to his diagnosis, and they never once offered anything beyond having him sit in the hallway or have him go to an empty office in the counselors' area.

19. During this time, Plaintiff C.M. was experiencing increasing behavioral removals, medication side effects, and escalating patterns of poor behavior witnessed and known by

---

[2] IDEA Section 300.101(c)(1): Each State must ensure that FAPE is available to any individual child with a disability who needs special education and related services, even though the child has not failed or been retained in a course or grade, and is advancing from grade to grade.

Defendant BABCOCK, yet, no formal evaluations were initiated, and Plaintiff C.M. remained in the MTSS process.

20. Consequently, Plaintiff C.M. had accumulated multiple suspensions and early pick-ups for disciplinary reasons, almost certainly exceeding ten (10) school days in total, without receiving special education protections or instruction during removal.

**October 30, 2025 Incident:**

21. On October 30, 2025, Defendant BABCOCK took Plaintiff C.M. and his classmates on a field trip to a Broadway-style performance of Flat Stanley. Plaintiff C.M. was accompanied by Plaintiff FATHER, who was a chaperone on the trip but was not a passenger on the bus.

22. Plaintiff C.M. reported that during the return bus ride to school, he became overstimulated by the loud noise and repeatedly asked his friends, seated in front of him, to stop screaming.

23. Following this request, which was denied, Plaintiff C.M. reported that he used a pen to softly poke two students on their backs from the opening between the seats only to ask them again to quiet down. Neither student complied.

24. Plaintiff C.M.'s teacher, Amy Geffers, upon observing the situation, confiscated the pen and sat beside Plaintiff C.M on the bus. Plaintiff C.M. reported that Amy Geffers placed her leg on Plaintiff C.M.'s leg, which upset and frightened Plaintiff C.M. As such, Plaintiff C.M. reported that he climbed over the seat into an empty seat and remained there for the remainder of the bus ride.

25. At no time did the school report that Amy Geffers placed her leg on Plaintiff C.M., which would appear to be an attempt to restrain him.

6

26. Upon returning to school, Plaintiff C.M. remained dysregulated and stood in the hallway, waiting to enter the classroom. He at no time attempted to hit or interfere with anyone during that time.

27. A video of the encounter between Plaintiff C.M. and MORRIS establishes that Defendant MORRIS stood in the hallway blocking Plaintiff C.M. from going into the classroom. Defendant MORRIS, regarding how Plaintiff C.M. caused her to fall, **inaccurately stated**, "*I was shuffling back and forth and he, like, wanted to get around me, so he like came up and like barreled I guess barreled into me which knocked me to the ground so I think I landed butt first and then I smacked my head against the floor.*" Upon viewing the video, it is immediately apparent that her statement was inaccurate.[3]

28. This incident demonstrated no intent to harm on behalf of Plaintiff C.M.; this was a reactionary, impulsive act consistent with emotional dysregulation and sensory overload.

29. Following the incident, Defendant GUETLER, the School Resource Officer, told Plaintiff C.M. that he "would be going to jail," which thoroughly frightened Plaintiff C.M., although Defendant MORRIS declined to press charges.

30. Plaintiff C.M. was initially suspended for ten (10) days, but the suspension was extended to twelve (12) days. Plaintiff C.M. also faced expulsion.

31. On November 11, 2025, Defendant BABCOCK demanded that Plaintiff C.M. appear in person at the school, although suspended from school, to provide and/or sign a written statement related to the October 30, 2025, incident, with the threat that failure to do so by 2:00 p.m. would delay submission to Defendant SCHOOL BOARD for disciplinary review.

---

[3] This incident is captured on video recording and clearly shows that C.M. was not the primary antagonizer nor aggressor, and rather, was reacting to the guidance counselor's movements.

32. Counsel for Plaintiffs C.M., MOTHER, and FATHER immediately sent correspondence to Defendant BABCOCK addressed to the principal, Defendant TACK, that such a requirement was inappropriate for a child of Plaintiff C.M. 's age, and inconsistent with procedural safeguards under the Individuals with Disabilities Education Act (IDEA) and Section 504 of the Rehabilitation Act of 1973.

33. Counsel for Plaintiffs C.M., MOTHER, and FATHER further requested that a Manifestation Determination Review (MDR) be conducted to determine whether Plaintiff C.M. 's conduct was caused by, or had a direct and substantial relationship to Plaintiff C.M.'s disability, and/or whether it was the result of the school's failure to identify and evaluate him.

34. Additionally, counsel for Plaintiffs C.M., MOTHER, and FATHER requested the following:

   a. Pause any ongoing disciplinary investigation and postpone transmission of the October 30, 2025 matter to Defendant SCHOOL BOARD until an MDR is completed and IDEA/504 evaluations are initiated;

   b. Convene an MDR within ten (10) school days to review whether the October 30th conduct was a manifestation of Plaintiff C.M.'s disability and/or medication effects;

   c. Initiate a comprehensive evaluation including psychoeducational, occupational therapy, speech-language, and Functional Behavior Assessment (FBA) components;

d. Provide written clarification of all suspension dates, including whether October 30th and 31st were coded as suspensions or excused absences, and confirm provision of educational services during removal;

e. Release to Plaintiffs MOTHER and FATHER any video footage from school cameras depicting the hallway or classroom area during the October 30th incident.

35. After this correspondence was sent, Defendant BABCOCK agreed to schedule and conduct a Manifestation Determination Review meeting.

36. Furthermore, on November 14, 2025, the video footage of the October 30th incident was released to the Plaintiffs' MOTHER and FATHER.

37. Plaintiffs MOTHER and FATHER contend that the incident, as described by the counselor, is inaccurate in light of the video's contents. The video depicts the following:

a. Counselor, Defendant MORRIS, and teacher, Amy Geffers, would not permit Plaintiff C.M. to enter his classroom, both standing in the hallway in front of the classroom door.

b. Plaintiff C.M. moved towards the adjoining classroom. Defendant MORRIS chased after Plaintiff C.M., who attempted to move back towards his classroom door, when Defendant MORRIS began antagonizing Plaintiff C.M. by fully extending her arms and shuffling her feet back and forth to prevent Plaintiff C.M. from moving towards his classroom. During the 5th shuffle, Plaintiff C.M. is observed going under Defendant MORRIS's arms in an attempt to escape, **not** an attempt to push her.

c.  The video further shows Defendant MORRIS lose her footing and fall, taking Plaintiff C.M. with her, who falls on his knees. Defendant BABCOCK, never documented or reported Plaintiff C.M. falling.

38. This video depiction is in **clear conflict** with the statement made by Defendant MORRIS, who indicated that Plaintiff C.M. barrelled into her, thereby knocking her to the ground, causing Defendant MORRIS to hit her head.

39. On December 2, 2025, a Manifestation Determination Review (MDR) meeting was held. Notably, Defendant MORRIS and Amy Geffers, although involved in the incident, were not present. At this meeting, Plaintiffs requested to view the video recording of the aforementioned incident, but were denied. At all times material hereto, the video footage was in the custody, possession, and control of DEFENDANTS, who had the opportunity to view the video before the meeting.

40. The Manifestation Determination Review (MDR) paperwork described the incident **inaccurately** as follows: "Upon returning from a field trip on 10/30/25, Plaintiff C.M. became mad. Plaintiff C.M. climbed over a seat on the bus and slapped a student. After returning to school, a teacher blocked Plaintiff C.M. from eloping. Plaintiff C.M. knocked the teacher over."

41. Although requested, the inaccurate statements were not removed from the paperwork.

42. At the conclusion of the MDR, it was determined that the October 30, 2025, incident was a manifestation of Plaintiff C.M. 's disability.

43. On December 2, 2025, after the MDR concluded, Plaintiff MOTHER emailed Shannon Treece, the Executive Director of Schools for Defendant  BABCOCK to request a meeting to appeal the false allegations against Plaintiff C.M. and work to get his record

10

cleared. Shannon Treece responded on December 3, 2025, agreeing to meet, schedules pending.

44. On December 8, 2025, Shannon Treece's Administrative Assistant responded with options for dates a few weeks away. Plaintiff MOTHER explained that matters had further escalated with Defendant BABCOCK and requested an earlier date. Shannon Treece's Administrative Assistant responded back and confirmed December 16th, 2025, at 1:30 pm.

**December 2, 2025 Incident**

45. On December 2, 2025, at the end of the lunch period, during clean-up time, Plaintiff C.M.'s classmate, F.P., continuously kept bumping into Plaintiff C.M., invading his space where he sat quietly at the lunch table, despite Plaintiff C.M. 's request for F.P. to stop.

46. After the second bump, Plaintiff C.M. gently pushed F.P. away. However, F.P. repeatedly entered Plaintiff C.M's personal space and antagonized Plaintiff C.M., despite Plaintiff C.M. asking F.P. to stop. This incident unfolded with Plaintiff C.M. 's paraprofessional, Mr. Baker,  employed by Defendant SCHOOL BOARD and working in DEFENDANT BABCOCK, watching the entire escalation and never once stepping in to intervene or even seeming concerned. His nonchalant reaction to the situation is captured in the video viewed by PLAINTIFFS.

47. Despite clearly capturing the above-referenced incident on video, Defendants SCHOOL BOARD, BABCOCK, and GUETLER repeatedly mischaracterized the event, labeling Plaintiff, C.M., as the primary and sole aggressor and antagonist.

48. Following the incident of December 2, 2025, Plaintiff C.M. had charges pressed against him for alleged "battery by intentional touch or strike."

11

49. On December 2, 2025, Defendant BODE called and left a voice message for Plaintiff, MOTHER.

50. On December 4, 2025, Defendant BODE called a second time and spoke to Plaintiff FATHER. Defendant BODE stated that there was an incident in the cafeteria that involved Plaintiff C.M. continuously pushing and chasing another child, F.P., around the lunchroom table. Defendant BODE asked to meet with Plaintiffs MOTHER and FATHER to discuss disciplinary action for Plaintiff C.M. Plaintiff FATHER stated there was an MTSS meeting scheduled for December 9, 2025, and asked if they could meet after that, to which Defendant BODE agreed.

51. Plaintiff FATHER asked Defendant BODE to see the video of the December 2, 2025, incident, to which Defendant BODE agreed to have the video at the December 9, 2025, meeting.

52. On December 8, 2025, during the morning car line drop off, Defendant, GUETLER, asked Plaintiff MOTHER to roll her window down and stated, "I need you to park and come inside." Defendant GUETLER explained he had charges pressed on C.M., and he needed Plaintiff MOTHER to sign diversion papers. Plaintiff MOTHER indicated that she wanted her husband, Plaintiff FATHER and attorney present. Defendant GUETLER told her to "go get him and come back." Plaintiff MOTHER asked who pressed charges on Plaintiff, C.M., and for what, to which Defendant GUETLER advised it was the parent of F.P.

53. On that same day, Plaintiffs MOTHER and FATHER met with Defendant GUETLER, around 8:30 a.m. Defendant GUETLER asked Plaintiffs MOTHER and FATHER to sign the diversion papers without explaining what they meant. Plaintiffs MOTHER and

12

FATHER advised that they were not refusing to sign the papers but would not do so without an explanation. Plaintiffs MOTHER and FATHER thereafter requested a copy of the Incident Report and the ability to view the video of the incident sooner than the December 9, 2025, date. Defendant GUETLER informed Plaintiffs MOTHER and FATHER that the Defendant BABCOCK did not have the incident report and video ready.

54. At the same meeting on December 8th, Defendant GUETLER explained that when Defendant BODE contacted F.P.'s parents, they were given the option to allow Defendant BABCOCK to discipline Plaintiff C.M. or to involve the police.

55. Plaintiffs MOTHER and FATHER asked to file a report and press charges against Defendant MORRIS for the incident on October 30, 2025, and against F.P. for the incident on December 2, 2025.

56. Defendant GUETLER stated that he saw the videos, completed his investigation, and would not take Plaintiff MOTHER's and Plaintiff FATHER's reports. As a result, Plaintiffs MOTHER and FATHER asked for Defendant GUETLER'S supervisor's information, to which Defendant GUETLER provided Joseph Barlow's information.

57. On December 8, 2025, Plaintiffs MOTHER and FATHER called Joseph Barlow immediately after leaving the meeting with Defendant GUETLER. Plaintiffs MOTHER and FATHER reported Defendant GUETLER's misconduct, which included intimidation, requesting Plaintiffs MOTHER and FATHER to sign diversion papers without providing an explanation, refusal to take a report, and the mishandling of the October 30, 2025, and December 2, 2025 incidents.

58. Joseph Barlow stated Defendant GUETLER had been an officer for many years without any issue. Joseph Barlow further stated that Defendant GUETLER's reports would require his sign-off, and that he would request the videos from Defendant GUETLER for review. When Plaintiffs MOTHER and FATHER asked if he would follow up with them, he stated that any further action would be handled by the State Attorney's office.

59. On December 8, 2025, Plaintiffs MOTHER and FATHER physically went to the Charlotte County Police Station, District 5 office, to make a report after feeling unheard by Joseph Barlow. Plaintiffs MOTHER and FATHER's statement was recorded by Corporal Sean Freytag of Charlotte County Sheriff's Office.

**The District's Retaliation:**

60. On December 9, 2025, an MTSS/TST (Multi-Tiered System of Supports/Teacher Support Team) meeting was held to follow up on the data that the school had been collecting on behalf of Plaintiff C.M. At the time this meeting was scheduled, the December 2, 2025, incident was not a part of this meeting.

61. The video of the December 2, 2025, incident was shown after the December 9, 2025, MTSS/TST meeting. Prior to that meeting, Plaintiff's MOTHER and FATHER's attorney requested to also view the video of October 30, 2025, and were denied by Defendant BABCOCK.

62. The video clearly shows that information previously provided to Plaintiffs MOTHER and FATHER regarding this incident was inaccurate, *i.e.,* that Plaintiff C.M. was the initiator and sole aggressor, and that he chased F.P. around the table, continuously pushing her.

63. On December 8, 2025, prior to the scheduled meeting the next day, Plaintiffs MOTHER and FATHER requested Incident Reports but were informed that they had not yet been

14

completed. As of the date of this filing, Plaintiffs MOTHER and FATHER have not yet received any Incident Reports.

64. Plaintiffs MOTHER and FATHER were informed that Defendant BODE had notified F.P.'s parents and reported the cafeteria incident. Defendant BABCOCK refused to disclose to Plaintiff C.M.'s parents, Plaintiffs MOTHER and FATHER, what had been reported to F.P.'s parents. Plaintiffs MOTHER and FATHER asked Defendant BODE if F.P.'s parents had seen the video, to which she replied that they had not.

65. Viewing the video and comparing it to the school's description of the incident, there is no doubt that F.P.'s parents were **not** provided with the truth; otherwise, they would not have wanted to press charges against Plaintiff C.M. Defendant BODE's actions appear to have been clearly unprofessional and a deliberate misrepresentation of the truth.

66. The meeting of December 9, 2025, included a back-and-forth exchange between Defendant BABCOCK and Plaintiffs MOTHER and FATHER. Defendant BABCOCK'S and SCHOOL BOARD'S attorney was also present at the meeting. At no time did the attorney ever interject that the parents' alleged behavior was out of control or disruptive.

67. Following the video shown at the December 9, 2025, meeting, Plaintiffs MOTHER and FATHER, genuinely upset by the school's misrepresentation of the incident, rose from the table and left.

68. Following the December 9, 2025, meeting, Plaintiffs MOTHER and FATHER sent email correspondence to Defendant BABCOCK and Defendant SCHOOL BOARD, as well as the Charlotte County Sheriff's Office, on the same day, highlighting the mishandling of the events on October 30, 2025, and December 2, 2025, and requesting an immediate appeal. This email was sent with the forethought of ensuring Plaintiff C.M. 's safety and

education, and thereby requesting a full review of the Defendant GUETLER's handling of both events. Specifically, Plaintiffs MOTHER and FATHER requested the following:

a. An immediate halt and review of any criminal referral, charges, or diversion decisions related to Plaintiff C.M for the incident of December 2, 2025, until a full and accurate review of the video and documentation is completed;

b. Full review of Defendant GUETLER'S handling of both incidents, including his refusal to take Plaintiffs MOTHER and FATHER's report, any inaccurate or incomplete descriptions of the October 30, 2025, and December 2, 2025, events; and whether his actions and statements were consistent with Charlotte County Sheriff Office policy and training when dealing with a 7-year-old on campus;

c. Correction and clarification of Plaintiff C.M.'s school record for the aforementioned incidents, including: documentation that Defendant MORRIS chased and blocked Plaintiff C.M., including that Plaintiff C.M. fell down with her; documentation that F.P. bumped into Plaintiff, C.M. twice on December 2, 2025, and that Plaintiff C.M. asked her to stop; context regarding his ADHD diagnosis and likely fight-or-flight responses; and review and correction of any entries labeling him as the "aggressor" for the aforementioned incidents without full context.

69. Within two hours of sending this email correspondence, Defendant TACK responded to Plaintiffs MOTHER and FATHER's email, alleging that the conduct displayed by Plaintiffs MOTHER and FATHER at the meeting of December 9, 2025, by their simply leaving the meeting, was unprofessional and unacceptable. Defendant TACK abruptly cancelled a follow-up MTSS/TST meeting for the next day, December 10, 2025,

16

scheduled to address Plaintiff C.M.'s immediate needs with Plaintiff C.M. and Plaintiffs MOTHER and FATHER.

70. That very same day of December 9, 2025, two sheriffs, including Corporal Freytag, arrived at Plaintiffs' MOTHER and FATHER's home and issued them a Trespass Order that prevented Plaintiffs' MOTHER and FATHER's participation in school activities for not only Plaintiff C.M. but also their older son, C.M.2. The Trespass Order was signed by Shannon Treece and DFC C. Nova, SRO, employed by the Defendants SCHOOL BOARD and BABCOCK as a School Resource Officer, as well as Defendant, Charlotte County Sheriff's Office.

71. The sheriff stated that Plaintiff C.M. would be considered a "walker" if C.M.2 was not at school, meaning that Plaintiff C.M. would be required to walk himself to school. His statement violates the Defendant BABCOCK'S own rules, which require a 2nd-grade student to be picked up by an adult or a sibling in 4th grade or higher. Furthermore, although not written in the actual Trespass Order, Corporal Freytag stated, "They have expressly asked that you guys have zero contact with any staff at the school."

72. Later that day, Shannon Treece emailed Plaintiffs MOTHER and FATHER regarding Defendant BABCOCK'S perception of Plaintiffs MOTHER and FATHER's alleged poor behavior at the MTSS meeting.

73. Shannon Treece stated that if the parties met, "[Their] focus will not be to debate prior decisions, but to identify the path forward and determine how we can best support your student." Plaintiffs MOTHER and FATHER allege that this made it appear Shannon Treece was not taking the appeal seriously.

17

74. On December 9, 2025, rather than conducting a preliminary inquiry or verifying the accuracy of the allegation raised by Plaintiffs MOTHER and FATHER'S email, Terry Cochran, Charlotte County Sheriff's Office, Professional Standards & Training Director, responded to the Charlotte County Sheriff's Office Internal Affairs stating, "This same child also knocked down a school counselor (no charges) documented under case number 2510-002902." Terry Cochran made this statement without investigation, corroboration, or personal knowledge, despite the allegation being specifically raised by Plaintiff MOTHER as a matter requiring investigation.

75. By transmitting unverified hearsay as fact, Terry Cochran improperly injected prejudicial information into the Internal Affairs process at its inception.

76. On December 11, 2025, Plaintiffs MOTHER and FATHER's attorney sent an email to Defendants SCHOOL BOARD and BABCOCK'S attorney, regarding the Trespass Order, requesting that the Trespass Order be rescinded in full, which did not occur.

77. Later that night, at 10:08 p.m., a sheriff went to the home of Plaintiffs' C.M.' Parents' home, Plaintiffs MOTHER and FATHER, but they were not at home.

78. On December 12, 2025, at 7:14 a.m., Defendant GUETLER went to Plaintiffs' MOTHER and FATHER'S home, but they were not there.

79. On December 12, 2025, Plaintiffs MOTHER and FATHER contacted the Charlotte County Sheriff's Office, inquiring why officers came to their home. Dispatchers stated that there were no records of any attempt to visit. Plaintiff FATHER asked for Corporal Freytag to call him. Corporal Freytag rang the doorbell at Plaintiffs' MOTHER and FATHER'S home. Plaintiffs MOTHER and FATHER spoke to Corporal Freytag through the doorbell camera. Corporal Freytag explained the Defendant BABCOCK had amended

18

the Trespass Order, stating Plaintiffs MOTHER and FATHER "May use walker gate & car line and intercom system." The amended Trespass Order was signed by Defendant TACK and Defendant GUETLER.

80. On January 7, 2026, Plaintiffs MOTHER and FATHER received a call from Joe King, Coordinator of District Security and Emergency Management, who told them he had spoken with Shannon Treece, who indicated she never said that Plaintiffs' MOTHER and FATHER were to have zero contact with any Defendant BABCOCK staff. Plaintiff MOTHER and FATHER were told by Joe King that Shannon Treece would determine if the physical Trespass Order would be removed only if Plaintiffs MOTHER and FATHER would be cordial and that she would have to talk to them to determine if they would be, in fact, cordial.

81. As of the date of the filing, Shannon Treece has yet to reach out to Plaintiffs MOTHER and FATHER regarding the lifting of the Trespass Order.

82. On January 7, 2026, Plaintiffs MOTHER and FATHER received a call from Lieutenant Eric Burke, stating Plaintiffs MOTHER and FATHER must have misconstrued the message from Corporal Freytag, as that is not written in the Trespass Order.

83. Plaintiffs MOTHER and FATHER asked that Lieutenant Eric Burke watch the video to hear what was stated. Lieutenant Eric Burke placed Plaintiffs' MOTHER and FATHER on hold to watch the bodycam footage from Corporal Freytag delivering the Trespass Order. Lieutenant Eric Burke stressed that Plaintiffs MOTHER and FATHER were "asked" to have zero communication with any Defendant BABCOCK staff and that it was not part of the physical Trespass Order. Plaintiffs MOTHER and FATHER explained they were following the Sheriff's orders and asked whether the Charlotte County Sheriff's Office

19

could put something in writing, stating that Corporal Freytag's statements to PLAINTIFFS were inaccurate and that PLAINTIFFS could contact the Defendant BABCOCK. Lieutenant Eric Burke refused to put anything in writing, even stating there would not be a report of that call, as "[they] don't make reports for every call they make."

84. The Plaintiffs' MOTHER and FATHER have had no contact with the Defendant BABCOCK since the Trespass Order was issued.

## COUNT I

**DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT–DENIED THE BENEFITS OF EDUCATIONAL SERVICES BY REASON OF DISABILITY**

*C.M. vs. Defendants, SCHOOL BOARD and BABCOCK*

85. Plaintiff C.M. hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

86. The Americans with Disabilities Act ("ADA") prohibits discrimination against otherwise qualified individuals with disabilities on the basis of their disability. 42 U.S.C. § 12132. To establish a claim under the ADA, a plaintiff must demonstrate that: (1) he has a disability, or was regarded as having a disability, under the ADA; (2) he was "otherwise qualified" to participate in school activities; and (3) he was "denied the benefits of the program or was otherwise subject to discrimination because of his disability." *Novella v. Wal-Mart Stores, Inc.*, 459 F. Supp. 1231, 1234 (M.D. Fla 2006).

87. The Defendants, SCHOOL BOARD and BABCOCK, discriminated against Plaintiff C.M. and denied him the benefits of his program under the ADA when:

   a. The Plaintiff C.M. is recognized as a person with disabilities, which, again, includes, *inter alia*, Attention Deficit Hyperactivity Disorder;

20

b.  The Defendants SCHOOL BOARD and BABCOCK are federal fund recipients and is a place of public accommodation;

c.  Plaintiff C.M. is otherwise qualified to participate in the program.

d.  The Defendants SCHOOL BOARD and BABCOCK denied Plaintiff C.M. the benefits of his program and discriminated against him based on his disability in several ways as pleaded in the Factual Pleadings, which are incorporated herein;

e.  Plaintiff C.M.'s accommodations were reasonable and, in no way, fundamentally altered the nature and essence of the program;

f.  The Defendants SCHOOL BOARD and BABCOCK'S deliberate indifference to implementing Plaintiff C.M. 's accommodations and modifications, together with its intentional discrimination, interfered with his ability to fully participate and benefit from his program.

88. Defendants SCHOOL BOARD and BABCOCK were formally notified of Plaintiff C.M.'s diagnoses and yet deliberately chose to ignore his diagnoses without implementing any accommodations.

89. As a result of Defendants SCHOOL BOARD and BABCOCK's deliberate indifference to Plaintiff C.M.'s needs, his behaviors in school began to worsen: Plaintiff C.M. was experiencing increasing behavioral removals, medication side effects, and escalating patterns of poor behavior. Yet, no formal evaluations were initiated, and Plaintiff C.M. remained in the MTSS process.

a.  Consequently, Plaintiff C.M. had accumulated multiple suspensions and early pick-ups for disciplinary reasons, almost certainly exceeding ten (10) school days

in total, without receiving special education protections or instruction during removal.

90. Defendants SCHOOL BOARD and BABCOCK remained indifferent and woefully ignorant of Plaintiff C.M.'s needs, and resulted in the escalation of the incident of October 30, 2025, as described more fully above.

91. Defendants SCHOOL BOARD and BABCOCK continuously remained indifferent following the incident by imposing a disproportionate punishment upon Plaintiff C.M. for the incident of October 30, 2025, despite knowing his needs and despite having the video depicting the incident that clearly contradicts what Plaintiff C.M.'s teacher reported.

92. Defendants SCHOOL BOARD and BABCOCK consciously disregarded a known and substantial risk that, without accommodations and supports, Plaintiff C.M.'s disability-related behaviors would result in disciplinary consequences.

93. Furthermore, despite receiving formal notice of Plaintiff C.M.'s written diagnoses before the incident, Defendants SCHOOL BOARD and BABCOCK refused to convene a Manifestation Determination Review until PLAINTIFFS' counsel requested one.

94. Unsurprisingly, the MDR meeting found that the incident of October 30, 2025 was a result of Plaintiff C.M. 's disability, and not a conduct issue.

95. Up until and throughout the proceedings following the October 30, 2025, Defendants SCHOOL BOARD and BABCOCK failed to initiate any evaluation, convene any meetings, or implement behavioral supports for Plaintiff C.M.

96. Instead, even after finding Plaintiff C.M.'s conduct of October 30, 2025 was a result of his disability, Defendants SCHOOL BOARD and BABCOCK continuously retaliated

against PLAINTIFFS for advocating on behalf of their son, Plaintiff C.M., by going so far as issuing a trespass order that prevents them from stepping foot on campus.

97. As a direct and proximate result of the Defendants SCHOOL BOARD and BABCOCK'S deliberate indifference and intentional discrimination, the Defendants SCHOOL BOARD and BABCOCK denied Plaintiff C.M. the benefits of his program and on the basis of his disability.

98. Wherefore, the Plaintiff C.M. prays for relief against the Defendants SCHOOL BOARD and BABCOCK as hereinafter set forth in the prayer for relief.

## COUNT II

### DISCRIMINATION UNDER § 504 OF THE REHABILITATION ACT

### *C.M. vs. Defendants, SCHOOL BOARD and BABCOCK*

99. Plaintiff C.M. hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

100.    To establish a prima facie case under the § 504 of the Rehabilitation Act ("RA")[4], a party must show: (a) they are a person with a disability; (b) they were otherwise qualified for participation in the program; (c) the program they are challenging receives federal financial assistance; and (d) they were subject to discrimination solely on the basis of their disability. *J.P.M. v. Palm Beach Cnty. Sch. Bd.*, 877 F. Supp. 2d 1309 (S.D. Fla. 2012)

101.    The Plaintiff C.M. is recognized as a person with disabilities, which, again, includes, *inter alia*, Attention Deficit Hyperactivity Disorder.

102.    The Defendants SCHOOL BOARD and BABCOCK are recipients of federal funds and are places of public accommodation.

---

[4] *See* 29 U.S.C. § 794(a).

23

103.  Plaintiff C.M. is otherwise qualified to participate in the program.

104.  The Defendants SCHOOL BOARD and BABCOCK denied Plaintiff C.M. the benefits of his program and discriminated against him on the basis of his disability in several ways as pleaded in the Factual Pleadings, which are incorporated herein.

105.  Defendants SCHOOL BOARD and BABCOCK had actual knowledge of Plaintiff C.M. 's disability, and despite this knowledge, failed to implement reasonable accommodations or implement behavioral supports.

106.  Defendants SCHOOL BOARD and BABCOCK's refusal to provide reasonable accommodations denied Plaintiff C.M. meaningful access to educational benefits and services available to nondisabled students.

107.  The Defendants SCHOOL BOARD and BABCOCK'S deliberate indifference to implementing Plaintiff C.M. 's accommodations and modifications, together with their intentional discrimination and deliberate indifference, interfered with his ability to fully participate and benefit from his program.

108.  As a result of Defendants SCHOOL BOARD and BABCOCK's deliberate indifference to Plaintiff C.M.'s needs, his behaviors in school began to worsen: Plaintiff C.M. was experiencing increasing behavioral removals, medication side effects, and escalating patterns of poor behavior. Yet, no formal evaluations were initiated, and Plaintiff C.M. remained in the MTSS process.

   a.  Consequently, Plaintiff C.M. had accumulated multiple suspensions and early pick-ups for disciplinary reasons, almost certainly exceeding ten (10) school days in total, without receiving special education protections or instruction during removal.

109.   Defendants SCHOOL BOARD and BABCOCK remained indifferent and woefully ignorant of Plaintiff C.M.'s needs, and resulted in the escalation of the incident of October 30, 2025, as described more fully above.

110.   Defendants SCHOOL BOARD and BABCOCK continuously remained indifferent following the incident by imposing a disproportionate punishment upon Plaintiff C.M. for the incident of October 30, 2025, despite knowing his needs and despite having the video depicting the incident that clearly contradicts what Plaintiff C.M.'s teacher reported.

111.   Defendants SCHOOL BOARD and BABCOCK consciously disregarded a known and substantial risk that, without accommodations and supports, Plaintiff C.M.'s disability-related behaviors would result in disciplinary consequences.

112.   Furthermore, despite receiving formal notice of Plaintiff C.M.'s written diagnoses before the incident, Defendants SCHOOL BOARD and BABCOCK refused to convene a Manifestation Determination Review until PLAINTIFFS' counsel requested one.

113.   Unsurprisingly, the MDR meeting found that the incident of October 30, 2025 was a result of Plaintiff C.M. 's disability, and not a conduct issue.

114.   Up until and throughout the proceedings following the October 30, 2025, Defendants SCHOOL BOARD and BABCOCK failed to initiate any evaluation, convene any meetings, or implement behavioral supports for Plaintiff C.M.

115.   Instead, even after finding Plaintiff C.M.'s conduct of October 30, 2025 was a result of his disability, Defendants SCHOOL BOARD and BABCOCK continuously retaliated against PLAINTIFFS for advocating on behalf of their son, Plaintiff C.M., by going so far as issuing a trespass order that prevents them from stepping foot on campus.

25

116.    As a direct and proximate result of Defendants SCHOOL BOARD and BABCOCK'S deliberate indifference and intentional discrimination, the Defendants SCHOOL BOARD and BABCOCK denied Plaintiff C.M. the benefits of his program on the basis of his disability.

117.    Wherefore, the Plaintiff C.M. prays for relief against the Defendants as hereinafter set forth in the prayer for relief.

## COUNT III

## RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT

### Stacy M., John M., and C.M. vs.  Defendants, SCHOOL BOARD and BABCOCK

118.    Plaintiffs C.M., MOTHER, and FATHER hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporate them herein.

119.    The Americans with Disabilities Act protects individuals from retaliation for engaging in activities, seeking to press or vindicate rights provided by statute:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a).

120.    Plaintiffs C.M., MOTHER, and FATHER engaged in a protected and lawful activity when they requested clarification regarding the aforementioned incidents and the handling of those incidents by the Defendants SCHOOL BOARD and BABCOCK and their agents and servants.

121.    The Defendants SCHOOL BOARD and BABCOCK retaliated against the Plaintiff C.M. as pleaded above herein.

26

122. The retaliatory conduct further denied Plaintiff C.M.'s access to his program and chilled his and his Parents' ability to advocate for him.

123. The Defendants, SCHOOL BOARD and BABCOCK'S, retaliation is the direct and proximate cause of Plaintiff's MOTHER and FATHER's harms and damages, including Plaintiff FATHER's inability to accompany C.M.2 on an overnight field trip, whereby Defendants only offered Plaintiffs MOTHER and FATHER a partial refund.

124. Plaintiffs MOTHER and FATHER are also being denied the opportunity to attend C.M.2's Project-Based Learning Culminating Event, which is attended by all of the students' parents, thereby denying C.M.2 the opportunity to showcase his completed project. Plaintiffs MOTHER and FATHER were also denied their ability to demonstrate their support and appreciation of their child's hard work.

125. Wherefore, the Plaintiffs pray for relief against the Defendants SCHOOL BOARD and BABCOCK as hereinafter set forth in the prayer for relief.

<u>**COUNT IV**</u>

**RETALIATION UNDER SECTION 504 OF THE REHABILITATION ACT**

***Stacy M., John M., and C.M. vs. Defendants, SCHOOL BOARD and BABCOCK***

126. Plaintiffs C.M., MOTHER, and FATHER hereby reallege and reaffirm all matters set forth in the preceding paragraphs of this complaint and incorporate them herein.

127. The federal regulations under § 504 provide:

No recipient [of federal funds] or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by the [Rehabilitation Act], or because he has made a complaint, testified, assisted, or participated in any manner, proceeding or hearing.

34 CFR § 100.7(e).

27

128. Plaintiffs C.M., MOTHER, and FATHER engaged in a protected and lawful activity when they inquired as to the handling of the aforementioned incidents and requested accommodations for Plaintiff C.M. 's disabilities.

129. The Defendants SCHOOL BOARD and BABCOCK retaliated against the Plaintiffs as pleaded in ¶ 47-63.

130. The retaliatory conduct further denied Plaintiff, C.M. 's access to his program and chilled his and Parents' ability to advocate for him.

131. The Defendants' SCHOOL BOARD and BABCOCK'S retaliation is the direct and proximate result of Plaintiffs' harms and damages, including emotional distress, psychological distress, loss of educational opportunities, loss of wages, and other damages as set forth herein.

132. Wherefore, the Plaintiffs pray for relief against the Defendants as hereinafter set forth in the prayer for relief.

## COUNT V

### STATE CREATED DANGER - 42 U.S.C. § 1983

### *C.M. vs. Defendants, SCHOOL BOARD and BABCOCK*

133. Plaintiff C.M. hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

134. Plaintiff C.M. alleges that the Defendants SCHOOL BOARD and BABCOCK deprived him of his rights and privileges secured to him by the Fourteenth Amendment by subjecting him to state-created danger.

135. The Defendants SCHOOL BOARD and BABCOCK are recipients of federal funds.

28

136.  The Defendants SCHOOL BOARD and BABCOCK subjected Plaintiff C.M. to state-created danger when:

a.  Defendants SCHOOL BOARD and BABCOCK failed to properly accommodate C.M. when it received notice of his disability;

b.  Defendants SCHOOL BOARD and BABCOCK knew that failure to provide reasonable and appropriate accommodations for Plaintiff C.M., or implement behavioral modifications for Plaintiff C.M., could result in a heightened risk of Plaintiff C.M. engaging in disability-related conduct resulting in physical confrontation and disciplinary escalation;

c.  As pleaded in the Factual Allegations, staff from the Defendant's SCHOOL BOARD and BABCOCK also antagonized Plaintiff C.M.'s emotional state, which was very clearly unregulated and unstable, as he was visibly shaken and could not calm down, which in turn, resulted in his ADHD-based behaviors. By way of example, and without limitation, the staff at the Defendant's SCHOOL BOARD and BABCOCK visibly blocked Plaintiff C.M. from entering his classroom, although visibly suffering still from the situation on the bus, thereby causing Plaintiff C.M. to be knocked to the floor with Defendant MORRIS and escalating the matter – this interaction deeply affected Plaintiff C.M., due to his disability and vulnerabilities as a young child forcefully knocked down by an adult figure;

d.  Furthermore, as pleaded in the Factual Allegations, the Defendants SCHOOL BOARD and BABCOCK failed to have properly trained aides and staff available to Plaintiff C.M. during his lunch period, who could have intervened and de-escalated the situation in which F.P. continuously bumped into him in front of a

29

paraprofessional who did nothing to intervene, despite being responsible for the care of Plaintiff C.M.

137. Defendants SCHOOL BOARD and BABCOCK remained indifferent and woefully ignorant of Plaintiff C.M.'s needs, and resulted in the escalation of the incident of October 30, 2025, as described more fully above.

138. Defendants SCHOOL BOARD and BABCOCK continuously remained indifferent following the incident by imposing a disproportionate punishment upon Plaintiff C.M. for the incident of October 30, 2025, despite knowing his needs and despite having the video depicting the incident that clearly contradicts what Plaintiff C.M.'s teacher reported.

139. Defendants SCHOOL BOARD and BABCOCK consciously disregarded a known and substantial risk that, without accommodations and supports, Plaintiff C.M.'s disability-related behaviors would result in disciplinary consequences.

140. Furthermore, despite receiving formal notice of Plaintiff C.M.'s written diagnoses before the incident, Defendants SCHOOL BOARD and BABCOCK refused to convene a Manifestation Determination Review until PLAINTIFFS' counsel requested one.

141. Unsurprisingly, the MDR meeting found that the incident of October 30, 2025 was a result of Plaintiff C.M. 's disability, and not a conduct issue.

142. Up until and throughout the proceedings following the October 30, 2025, Defendants SCHOOL BOARD and BABCOCK failed to initiate any evaluation, convene any meetings, or implement behavioral supports for Plaintiff C.M.

143. Instead, even after finding Plaintiff C.M.'s conduct of October 30, 2025 was a result of his disability, Defendants SCHOOL BOARD and BABCOCK continuously retaliated

30

against PLAINTIFFS for advocating on behalf of their son, Plaintiff C.M., by going so far as issuing a trespass order that prevents them from stepping foot on campus.

144. The actions and inactions of Defendants SCHOOL BOARD and BABCOCK in failing to provide reasonable accommodations despite Plaintiff C.M. 's known diagnoses, imposing a disproportionate punishment upon Plaintiff C.M. in light of the situations described above and his known diagnoses, and furthermore, retaliating against PLAINTIFFS in a manner involving police presence for advocating for their son, shocks the conscience.

    a. Specifically, Defendants SCHOOL BOARD and BABCOCK exhibited outrageous behavior when their employees, agents, servants, and staff physically knocked Plaintiff C.M. to the floor of his classroom, despite knowing the behavioral tendencies of Plaintiff C.M. as a result of his disability.

    b. Additionally, Defendants SCHOOL BOARD and BABCOCK'S employees, agents, servants, and staff went on to lie about the incident and how it occurred, and failed to provide PLAINTIFFS the incident report and videos depicting the incident timely.

145. Wherefore, the Plaintiffs pray for relief against the Defendants as hereinafter set forth in the prayer for relief.

**COUNT VI**

**NEGLIGENCE**

*Plaintiffs vs. Defendants, SCHOOL BOARD, BABCOCK, TACK, in her individual capacity, BODE, in her individual capacity, GUETLER, in his individual capacity, and MORRIS, in her individual capacity*

146.	Plaintiffs C.M., MOTHER, and FATHER hereby reallege all matters set forth in the preceding paragraphs of this complaint and incorporate them herein.

147.	As a condition precedent to this action, PLAINTIFFS provided written notice of claim to DEFENDANTS in compliance with Section 768.28(c). DEFENDANTS denied the claim. Therefore, all conditions precedent have been satisfied.

148.	At all times material hereto, Defendants TACK, BODE, GUETLER, MORRIS, were employed as teachers and/or school staff at Defendants SCHOOL BOARD and BABCOCK and exercised custodial authority and supervision over Plaintiff C.M.

149.	At all times material hereto, Defendants SCHOOL BOARD, BABCOCK, TACK, BODE, GUETLER, and MORRIS owed Plaintiff C.M. a duty to exercise reasonable care in supervising, disciplining, and responding to C.M.'s needs while Plaintiff was under Defendants' custody and control, and to provide a free and appropriate public education to Plaintiff, C.M.

150.	At all times material hereto, Defendants SCHOOL BOARD, BABCOCK, TACK, BODE, GUETLER, and MORRIS, had actual and/or constructive knowledge that Plaintiff C.M. had a documented medical diagnosis, which manifested in behavioral symptoms requiring specific responses and accommodations.

151.	Plaintiff C.M.'s diagnosis was communicated to Defendants, SCHOOL BOARD, BABCOCK, TACK, BODE, GUETLER, and MORRIS, through written communications and school records, making the risk of harm foreseeable if such a diagnosis was mishandled.

152. Defendants SCHOOL BOARD, BABCOCK, TACK, BODE, GUETLER and MORRIS breached their duty of care through operational acts and omissions, including but not limited to:

a. Failing to implement Plaintiff's C.M. required accommodations after receiving written confirmation of diagnosis;

b. Treating Plaintiff's C.M. manifestations as disciplinary infractions;

c. Failing to follow established behavior intervention protocols;

d. Receiving actual notice of Plaintiff C.M.'s diagnoses and consciously disregarding the need to perform an evaluation to address his needs;

e. Imposing punitive discipline upon Plaintiff C.M., although it was clear that his behaviors were related to his diagnoses, which Defendants knew of;

f. Escalating known behavioral concerns by blocking Plaintiff C.M. from entering his classroom and telling Plaintiff C.M. that he would be going to jail for his behavior;

g. Allowing Plaintiff C.M. to be continuously pushed and shoved by F.P. and declining to intervene;

h. Deviating from mandatory Defendants SCHOOL BOARD and BABCOCK policies and procedures governing student behavior and supervision;

i. Acting recklessly in ways through actions and omissions which prevented Plaintiff C.M. from obtaining FAPE.

153. As a direct and proximate result of Defendants' collective negligence, Plaintiff C.M. suffered emotional distress, worsening behavioral symptoms, and loss of educational opportunities, among other damages.

154.    Wherefore, the Plaintiffs pray for relief against the Defendants, as hereinafter set forth in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and award the following relief:

1. Damages for tortious interference and retaliatory discharge, including lost tuition benefits, lost income, and reputational harm;

2. Damages for retaliation in violation of applicable law and public policy protecting individuals who cooperate with law enforcement, including compensatory and punitive damages;

3. Compensatory damages for any tuition, fees, lost benefits, lost wages, and other financial losses suffered by Plaintiffs;

4. Scheduled ongoing school staff training regarding children with disabilities, including, but not limited to, behavior management and de-escalation training;

5. Remove all references to the aforementioned incidents from Plaintiff C.M.'s disciplinary record;

6. Lift and remove the Trespass Order that is currently in effect;

7. Attorney's fees and costs, as allowed by the law; and

8. Such other and further relief as this Court deems just and proper.

**THE PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

DATED: February 20, 2026

Respectfully Submitted,


Montgomery Law Office, PLLC
Attorney for Plaintiff
631 US 1, Suite 202
North Palm Beach, FL 33408
T: (561) 440-1820
F: (888) 954-5529
Principal email address:
joe@educationlawyers.com
Secondary email:
**(NOT for Service of Pleadings and Document)**
lynn@iwantjustice.com
ciarra@educationlawyers.com

  */s/Joseph Montgomery*
Joseph Montgomery, Esq.
Florida Bar No.: 209527

.

## <u>VERIFICATION</u>

Under penalties of perjury, I, Stacy and John McKinnes, declare that I have read the foregoing Complaint and that, to the best of my knowledge and belief, the facts stated in it are true. I understand that any false statement herein made is subject to the penalties of state law relating to false written declarations.


_____
STACY MCKINNES


_____
JOHN MCKINNES

36