UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

STACY and JOHN MCKINNES   :
Individually and as Natural Guardians of :  Case No.: 2:26-cv-00467-SPC-NPM
C.M., a minor, in his individual capacity, :  Judge Sheri Polster Chappell
            :
   Plaintiffs,      :
            :
 vs.          :
            :
THE SCHOOL BOARD OF CHARLOTTE :
COUNTY, FLORIDA, et al.    :
            :
   Defendants.     :
_____/

**PLAINTIFFS' RESPONSE TO DEFENDANT GUETLER's MOTION
TO DISMISS AMENDED  COMPLAINT [DE 10]
(AND MEMORANDUM OF LAW)**

Plaintiffs, STACY and JOHN McKINNES, individually, and as Natural Guardians of

C.M., a minor, in his individual capacity, by and through their attorneys, respectfully submits this

response in opposition to Defendants, Motion to Dismiss the Complaint, as submitted to the

Court on March 25, 2026.

I. **STATEMENT OF FACTS**

When faced with a motion to dismiss, the court is required to accept all well-pleaded

factual allegations in the complaint as true and construe them in the light most favorable to the

plaintiff. *Douglas v. United States,* 814 F.3d 1268, 1274 (11th Cir. 2016) The undisputed facts are

as follows.

The facts of this case as alleged in Plaintiff's Complaint and with all reasonable

inferences are as follows. A series of events involving Plaintiff C.M., a bright second-grade

student at Babcock Neighborhood School with Attention Deficit Hyperactivity Disorder, and his

1

Parents, Stacy and John McKinnes took place involving Defendants. At all times material hereto, Defendant Guetler was the School Resource Officer for Babcock Neighborhood School. Instead of embracing Plaintiff C.M. and providing accommodations for his diagnoses, as requested, Defendants, including Defendant Guetler, engaged in a prolonged course of reckless, wanton, willful, and retaliatory conduct that exacerbated Plaintiff C.M.'s diagnoses, caused emotional damage, and impacted his ability to receive a free and appropriate public education. As a result of this conduct, Defendant Guetler's instant Motion to Dismiss should be denied, as the conduct he exhibited is not shielded nor protected by Florida statutes.

On October 30, 2025, Plaintiff C.M. went on a field trip with his class. On their bus ride home from school, Plaintiff C.M. reported that he became overstimulated by the loud noise on the bus and repeatedly asked his friends, who were seated in front of him, to stop screaming. When the request was denied, Plaintiff C.M. reported that he used a pen to softly poke two students on their backs from the opening between the seats only to ask them again to quiet down. Neither student complied. There is also no evidence that Plaintiff C.M's poking left any marks on either students. Plaintiff C.M.'s teacher, Amy Geffers, witnessed the interaction, and thereafter confiscated the pen and sat beside Plaintiff C.M. on the bus, and then, placed her leg on Plaintiff's leg, which upset and frightened Plaintiff C.M., who then moved his seat to sit alone.

Following his return to school, Plaintiff was emotionally dysregulated and Defendant Morris attempted to keep him in the hallway, outright refusing him permission to enter his classroom by physically blocking him with her body. However, Plaintiff C.M. attempted to pass by Defendant Morris and knocked her down in the process. The entire incident is captured on video and has repeatedly been mischaracterized by Defendants and specifically, Defendant

2

Guetler.

After the incident occurred, Plaintiff C.M. was questioned by Defendant Guetler. In their interaction, Defendant Guetler told Plaintiff C.M. that "*he would be going to jail*" for knocking down Defendant Morris, although Defendant Morris declined to press charges and the interaction between Plaintiff C.M. and Defendant Morris was captured on video and showed no intent to harm on behalf of Plaintiff C.M.

The video clearly shows that Defendant Morris stood in the hallway blocking Plaintiff C.M. from going into the classroom. Defendant Morris, regarding how Plaintiff C.M. caused her to fall, inaccurately stated: *"I was shuffling back and forth and he, like, wanted to get around me, so he like came up and like barrelled. I guess barrelled into me which knocked me to the ground so I think I landed butt first and then I smacked my head against the floor."* Defendant Guetler never accepted the reality presented by the video and despite clear video evidence, continued to perpetuate a false narrative regarding the event.

A second serious incident occurred on December 2, 2025, when Plaintiff C.M.'s classmate, F.P., continuously bumped into Plaintiff C.M.'s, invading his space, despite Plaintiff C.M.'s request for F.P. to stop. After the second bump, Plaintiff C.M. gently pushed F.P. away, who did not let up and instead, continued antagonizing him. This entire incident unfolded with Plaintiff C.M. 's paraprofessional, Mr. Baker, watching the escalation and never once stepping in to intervene.

Following this event, Defendant Guetler, acting with implicit bias after his opinions of the event of October 30, again repeatedly mischaracterized this event and labeled Plaintiff C.M. as the primary and sole aggressor and antagonizer. Thereafter, on December 8, during the morning car line drop off, Defendant Guetler asked Plaintiff Stacy McKinnes to roll her window

3

down and stated, "I need you to park and come inside." Defendant Guetler explained that *he had charges pressed on C.M., and that he needed Plaintiff Mother to sign diversion papers.* Once Plaintiffs Stacy and John McKinnes met with Defendant Guetler to sign the diversion papers, he attempted to force them to sign them while simultaneously refusing to provide an explanation as to what the diversion papers meant.

Following this encounter, Plaintiffs Stacy and John McKinnes tried to file reports and press charges against Defendant Morris for the incident of October 30, 2025, and against F.P. for the incident on December 2, 2025. Defendant Guetler refused, stating he saw both videos and completed his investigations, denying Plaintiffs Stacy and John McKinnes the opportunity to protect their son. Defendant Guetler again denied the clear evidence presented by the videos which did not in any way demonstrate what he asserted as occurring.

On December 12, 2025, at 7:14 a.m., Defendant Guetler went to Plaintiffs' home, but they were not home. That same day, Plaintiffs contacted the Charlotte County Sheriff's Office, inquiring as to why Defendant Guetler came to their house, *and dispatchers said there were no records of any attempt to visit*. A trespass order was later issued to Plaintiffs, to prevent them from stepping foot on Babcock's campus and speaking with teachers, administration and staff, signed by Defendant Guetler.

## II.    LEGAL STANDARD

A motion to dismiss for failure to state a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint's allegations and its compliance with the pleading standards. When responding to a motion to dismiss, a plaintiff is required to demonstrate that the complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007);

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp., 550 U.S.* at 555. While detailed factual allegations are not required, the complaint must provide more than mere labels, conclusions, or a formulaic recitation of the elements of a cause of action. *Id*. A claim is factually plausible when the plaintiff pleads the factual content that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft*, 556 U.S. at 662. When faced with a motion to dismiss, the court is required to accept all well-pleaded factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Spence v. Am. Airlines, Inc.*, 718 F. Supp. 3d 612 (N.D. Tex. 2024).

1. **Plaintiffs' Complaint complies with Federal Rules of Civil Procedure and should not be considered a "shot-gun pleading."**

Federal Rules of Civil Procedure require a complaint to include a "short and plain statement of the ultimate facts showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *Bell Atl. Corp., 550 U.S.* at 555. The plaintiff must allege ultimate facts, not mere conclusions of law or evidentiary details, to show entitlement to relief. *See Ashcroft*, 556 U.S. at 662.

In *Weiland v. Palm Beach County Sheriff's Office*, the Eleventh Circuit held that re-alleging factual allegations at the beginning of each count does not necessarily constitute a shotgun pleading. *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1324-1326 (11th Cir. 2015) (holding that the two counts using incorporation paragraphs were informative enough to permit a court to readily determine if they state a claim upon which relief can be granted). The Court emphasized that dismissal is warranted only when it is "virtually impossible to know which allegations of fact are entitled to support which claim(s) for relief." *Weiland*, 792

5

F.3d at 1313.

Plaintiffs' Complaint contains detailed explanation of the series of events and facts that contributed to Plaintiffs' pursuing litigation against Defendants, and carefully identifies the role Defendant Guetler played in the series of events, as well as his actions that arose to reckless and wilful and wanton conduct. In fact, Count VI specifically includes reference to Defendant Guetler telling Plaintiff C.M. he would be going to jail. Similarly, Count VI delineates that Defendants, including Defendant Guetler, deviated from behavior intervention protocols and applicable Babcock policies and procedures following the series of events alleged in the factual allegations of Plaintiff's Complaint. Plaintiffs' incorporation paragraphs into each count merely serves to preserve judicial resources by not repeating each set of facts in multiple counts, wherein all the facts support each count, and on their face, show Plaintiffs are entitled to relief under the law.

**2. Whether defendant, Terrance Guetler's, conduct was willful and wanton, and whether he is to be afforded the protections of sovereign immunity under Florida law is a question for the trier of fact**

Under Florida law, a plaintiff may bring a negligence claim against a school officer for willful and wanton conduct committed against a student by overcoming the protections of sovereign immunity provided Fla. Stat. § 768.28. Under Fla. Stat. 768.28(9)(a), immunity does not extend to acts committed in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. *Furtado v. Yun Chung Law*, 51 So. 3d 1269, 1277 (Fla. 4th DCA 2011). Florida courts have equated bad faith with "the actual malice standard." *Peterson v. Pollack,* 290 So. 3d 102, 109-110 (Fla. 4th DCA 2020), *see also Parker v. Fla. Bd. of Regents ex rel. Fla. State Univ.*, 724 So. 2d 163, 167-170 (Fla. 1st DCA 1998). The "actual malice" and "malicious purpose" exceptions apply when the conduct was

committed with "ill will, hatred, spite, or an evil intent." *See Peterson,* 290 So. 3d at 109. Under Florida law, courts have held that it is a question for the jury as to whether a sheriff's liability was an abuse of lawful power. *McGhee v. Volusia Cnty.*, 679 So. 2d 729, 730 (Fla. 1996) (holding that whether there was an abuse of power by the defendant was a matter for the jury).

Furthermore, wanton conduct means "with a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done to persons or property." *See Peterson*, 290 So. 3d at 110. Willful means "conduct much more reprehensible and unacceptable than mere intentional conduct." *Id.* at 109. Taken together, Florida courts have interpreted willful and wanton conduct as showing conduct with actual malice or behavior that is more reprehensible than negligence, which is a standard higher than mere recklessness and involves conduct that is deliberate and egregious. *Williams v. Minneola*, 619 So. 2d 983, 987 (Fla. Dist. Ct. App. 1993).

However, Plaintiffs assert that Defendant Guetler's behavior as alleged in their Amended complaint could be concluded as wanton and wilful disregard, thereby stripping him of his protections afforded under sovereign immunity. In any case this question properly belongs to the jury. The facts as alleged in the complaint with all inferences resolved in favor of Plaintiffs establish that the course of conduct that Defendant Guetler exhibited was done out of spite, with ill will, and is reprehensible conduct, especially given that Plaintiff C.M. is a second grade student with known diagnoses. Defendant Guetler asserts that his actions were done without arrest or use of force; however, neither actions are required to find a Defendant loses his protection of sovereign immunity under Florida statute. Importantly, Defendant cites no authority imposing such a requirement, and Plaintiffs are aware of none..

As described above, Plaintiff was subjected to emotionally taxing events on October 30,

7

2025, which ultimately resulted in the physical encounter with Plaintiff C.M. upon the students' return to school, when Defendant Morris physically blocked Plaintiff C.M. from entering the classroom, which is captured on video.

After the incident occurred, Plaintiff C.M. was questioned by school staff, including Defendant Guetler. In their interaction, Defendant Guetler told Plaintiff C.M. that "*he would be going to jail*" for knocking down Defendant Morris, although Defendant Morris declined to press charges and the interaction between Plaintiff C.M. and Defendant Morris was captured on video and showed no intent to harm on behalf of Plaintiff C.M. If Defendant Guetler had investigated the incident properly, he would have learned of the emotionally and mentally taxing day that Plaintiff C.M. had on his field trip, and his dysregulated behavior upon returning to school. **Instead, Defendant Guetler told a second-grade student, who is only 7 years old and has a disability, that he would be going to jail.** Plaintiff C.M. naturally reacted with fear and has developed a fear of going to school.

This is conduct that goes beyond the bounds of mere recklessness, as a grown adult appearing as a police officer in school reprimanding a student could certainly instill great fear and terror into a young child by telling them they face jail time as a result of their seemingly harmless actions. Threatening a second-grade student with an unfounded threat of jail is wanton and wilful conduct, as it deviates from acceptable policies and procedures that school resource officers should face when dealing with elementary school situations. ***Importantly, nowhere in Defendant's Motion to Dismiss is it highlighted that Plaintiff C.M. is only a second-grade student, with a known disability, which makes this behavior even more egregious and reprehensible.***

This conduct also exceeds the scope of Defendant Guetler's power and authority by

8

nature of his role as School Resource Officer. Threatening a young student that he would be going to jail exceeds the bounds of decency, and applicable policies and procedures regarding the role of a School Resource Officer. This plausibly demonstrates that Defendant Guetler abused his power when making this statement, and said such out of spite and ill will, which is strictly denounced by governmental officials under Florida law.

Although the entire incident is recorded on camera, Defendant Guetler still made a conscious decision to tell this second grader that he would be going to jail for this encounter. The video clearly shows that Defendant Morris stood in the hallway blocking Plaintiff C.M. from going into the classroom. Defendant Morris, regarding how Plaintiff C.M. caused her to fall, inaccurately stated: ***"I was shuffling back and forth and he, like, wanted to get around me, so he like came up and like barrelled.. I guess barrelled into me which knocked me to the ground so I think I landed butt first and then I smacked my head against the floor."*** If the video clearly shows Defendant Morris physically blocking Plaintiff C.M., again, only a second grade student, from entering the classroom after the events of an emotionally exhausting day, how could he possibly be labeled as the primary and sole antagonizer?

Defendant Guetler also acted outside of the scope of his employment and authority in the events related to the incident between Plaintiff C.M. and classmate F.P, which was also caught on camera and witnessed entirely by Plaintiff C.M.'s paraprofessional, Mr. Baker.

Following this event, Defendant Guetler, acting with implicit bias after his opinions of the event of October 30, again repeatedly mischaracterized this event and labeled Plaintiff C.M. as the primary and sole aggressor and antagonizer. Thereafter, on December 8, during the morning car line drop off, Defendant Guetler asked Plaintiff Stacy McKinnes to roll her window down and stated, "I need you to park and come inside." Defendant Guetler explained that ***he had***

9

***charges pressed on C.M., and that he needed Plaintiff Mother to sign diversion papers.*** This was said despite a clear view of the entire encounter which shows student F.P. consistently antagonizing Plaintiff C.M. Once Plaintiffs Stacy and John McKinnes met with Defendant Guetler to sign the diversion papers, he attempted to force them to sign them while simultaneously refusing to provide an explanation as to what the diversion papers meant.

Following this encounter, Plaintiffs Stacy and John McKinnes attempted to file reports and press charges against Defendant Morris for the incident of October 30, 2025, and against F.P. for the incident on December 2, 2025. Defendant Guetler refused, stating he saw both videos and completed his investigations, denying Plaintiffs Stacy and John McKinnes the opportunity to protect their son.

On December 12, 2025, at 7:14 a.m., Defendant Guetler went to Plaintiffs' home, but they were not home, and Charlotte County Sheriff's Office confirmed that there were no records of any attempt by Defendant Guetler to visit their home recorded, which again highlights the extremely egregious conduct by Defendant Guetler. A trespass order was later issued to Plaintiffs, to prevent them from stepping foot on Babcock's campus and speaking with teachers, administration and staff, signed by Defendant Guetler.

Accepting the well-pled facts as true in the light most favorable to the plaintiff, the actions of Defendant Guetler can be concluded to be reckless, and rise to willful and wanton conduct. Defendant Guetler's motion to dismiss misses the  most important fact essential to this analysis: Plaintiff C.M. is a second grade student, who at all times during these events, was acting consistent with his diagnoses, and was overwhelmed, overstimulated, and constantly antagonized by others. Whether or not Defendant Guetler's behavior rises to the level required by law to impose personal liability, is a question for the trier of fact, not for resolution upon a

10

motion to dismiss.

## **Conclusion**

Based on the foregoing, Defendant's Motion to Dismiss should be denied, as it is clear that Plaintiffs' Complaint complies with Federal Rules of Civil Procedure, and further, that Defendant Guetler's actions were done recklessly, and with willful and wanton conduct, towards Plaintiff C.M., a second grade student with known disabilities.

Dated this 7th day of April, 2026.

Respectfully submitted,

*Joseph W. Montgomery*
Joseph W. Montgomery, Esq.
FL Bar No: 120569
Montgomery Law Group PLLC
631 U.S. Highway 1
Suite 202
North Palm Beach, Florida 33408
***Attorneys for Plaintiff***
joe@educationlawyers.com

11